IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BETTY J. RITTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:01-cv-519-F |
| | ) | (WO) |
| DR. FRANCIS J. HARVEY, Secretary of | ) | |
| Department of United States Army, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Betty J. Ritter (hereinafter "Ritter") brings this action against her employer, the United States Army, alleging claims of race discrimination and retaliation pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"). This cause is before the court on the defendant's motion to dismiss, or in the alternative, motion for summary judgment. (Doc. # 8). The court has reviewed the submissions of the parties and finds that, for the reasons set forth below, the motion[1] is due to be GRANTED.

---

[1] Although styled as a motion to dismiss or alternatively a motion for summary judgment, the parties have relied on matters outside the pleadings such as exhibits and affidavits. As a result, the court will hereafter treat the defendant's motion as only one for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(b); *also Trustmark Ins. Co., v. ESLU, Inc.,* 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.").

# I.  FACTS[2]  AND PROCEDURAL HISTORY

A.    *Employment Background*

Ritter, a Caucasian, has been employed as a Contract Specialist / Contracting Officer with the United States Army (hereinafter "Army") for approximately 28 years.  She has been employed as a Contracting Officer in the Construction Area at Fort Rucker, Alabama, for over fifteen years.[3]  As Contracting Officer, Ritter is a team leader[4] and her responsibilities include preparing both pre-award and post-award construction contracts and ensuring contract compliance with applicable Government regulations.  During the relevant time, Ritter's immediate supervisor was Brenda Clark (hereinafter "Clark"), a Caucasian female and the Supervisory Contract Specialist, Division Chief.[5]  Ritter claims that she was subjected to race discrimination and retaliation by Clark at the direction of Gloria Wheeler (hereinafter "Wheeler"), an African-American female and the Director of Contracting.[6]  Ritter's specific complaints of racial discrimination and discriminatory retaliation are described below.

Ritter's discrimination complaints stem from events which occurred in September

---

[2]  This recitation of "facts" is based upon materials presented by the parties, viewed in the light most favorable to the plaintiff.

[3]  Ritter began her employment at Fort Rucker in September 1989.

[4]  As team leader, Ritter oversees the work of contract specialists assigned to her team.

[5]  Clark is the Division Chief for the Department of Public Works support division.

[6]  Wheeler was Clark's immediate supervisor.

2

1998.  On September 17, 1998, Ritter was assigned the task of processing a modification to a roofing contract involving the Department of Public Works (hereinafter "DPW").  This modification had to be processed by September 28, 1998.  In her attempts to complete the task, Ritter discovered two legal issues which raised her concern.  As a result, Ritter sought guidance from Mike Lonsbury, (hereinafter "Lonsbury"), a Caucasian male and an attorney assigned to contracting at the Office of the Staff Judge Advocate at Fort Rucker.  Ritter also sought guidance from Elnora Smith-Killings (hereinafter "Smith-Killings"), an African-American female and a Contracting Officer in the same division as Ritter.[7]  During this time, Clark was absent from the office, so Ritter communicated the nature of her concerns and discussions to Wheeler.  Upon hearing Ritter's concerns, Wheeler directed her to contact Lonsbury and receive a response from him pertaining to whether the modification was within the scope of the contract.

Thereafter, Ritter contacted Lonsbury and, on September 24, 1998, he opined that the modification was within the scope of the contract.  Ritter brought the issue to Wheeler's attention again and informed her of Lonsbury's opinion regarding the contract.  Ritter told Wheeler that, despite Lonsbury's opinion, she believed the modification was outside the scope of the contract and required a competitive bid.  Ritter further opined that, under the circumstances, she could not sign or approve the contract modification.

On or around September 28, 1998, Ritter's immediate supervisor, Clark, returned to

---

[7]  Smith-Killings is also a team leader supervised by Clark.

the office and Ritter advised her of the situation.  Ritter informed Clark that the contract documents were prepared for signing except it needed to be determined who would sign the contract modification and issue the delivery order.  Ritter told Clark that she refused to sign the contract modification because she did not believe that it was within the scope of the contract.  Clark then asked Smith-Killings to sign the contract modification and she also refused.  Clark proceeded to ask other contracting officers, and eventually, Jim Snellgrove, a Caucasian male, signed the contract modification.

Frustrated with Ritter's refusal to sign the contract modification, Clark discussed the issue with Ritter and informed Ritter of her intent to reprimand Ritter for insubordination.[8]  Shortly thereafter, on October 6, 1998, Clark verbally counseled Ritter.[9]  Clark informed Ritter that she was receiving the counseling because she had recently displayed some disruptive behavior, was argumentative, and caused undue strife and disruption by delaying decisions to the last minute.[10]  Clark also informed Ritter that various complaints had been lodged against her by numerous contract specialists regarding her uncooperative attitude.[11]

---

[8]  Clark disputes this fact and contends that she never told Ritter that she would be written up for insubordination and had no intent to do so.

[9]  (Def. Ex. 3).  Clark counseled Ritter in the presence of three union representatives.  Ritter sought the accompaniment of the union representatives because she wanted witnesses for the event.

[10]  (Id.).

[11]  (Id.).  Specifically, two former contract specialists, Pat Lemons and Lynn Mauldin, refused to work with Ritter and two current contract specialists, Audrey Ivey and Nancy Bledsoe (hereinafter "Bledsoe"), expressed concerns about Ritter's tendency to shift responsibility to others. (Id.).  Interestingly, Bledsoe was the only contracting specialist on Ritter's team during this time period.

Ritter refused to sign the acknowledgment receipt for the memorandum of record evidencing the counseling.[12]

Clark also gave Ritter a Letter of Concern (hereinafter "Letter"), dated October 6, 1998, expressing Clark's concern about Ritter's inability to take full and complete responsibility for her contract actions, and her propensity towards finding obstacles in completing her work rather than finding ways to overcome those obstacles and complete the task.[13]  In the Letter, Clark expressed her discontentment with Ritter's handling of the September 28, 1998 incident and described another incident which occurred on September 17, 1998.[14]  Clark also advised Ritter that she employs "delaying tactics," has  the inability to "think outside the box" and repeatedly refuses to take responsibility for all her contract actions.[15]  Clark further advised Ritter that her actions were "hindering the mission and

---

[12]  According to Clark, this memorandum was prepared as documentation of the discussion that occurred when she provided the Letter of Concern to Ritter.

[13]  (Def. Ex. 2).

[14]  The Letter provides, in pertinent part:

During the month of September, [Ritter] continually disagreed with [Clark's] position on a contract action. [Clark] finally instructed [Ritter] to handle it as either a modification or a claim.  On 17 September,  [Ritter] returned the action to the customer still indicating the work was an unauthorized commitment although [Ritter] indicated in a memorandum to [Clark] on the same date that it might be handled as a claim.  When the action returned on 30 September, [Clark] instructed [Ritter] to do what [she] had to do to get the matter settle. [sic] Again, [Ritter] attempted to shift the responsibility to [Clark].

(*Id*. at ¶ 4).

[15]  (*Id*. at ¶¶ 3 & 5).

affecting the morale and management of the division." [16]  In the Letter, Clark  further states

that it "is an informal action and will not be placed in [Ritter's] formal personnel records."[17]

Ritter's acknowledged receipt of the Letter is evidenced by her signature on October 6, 1998.

Subsequently, these Letters were destroyed.[18]

B.    *Administrative Complaint*

On October 14, 1998, Ritter filed a informal complaint alleging race discrimination,

racially hostile work environment and retaliation with the Equal Employment Opportunity

(hereinafter "EEO") office at Fort Rucker.[19]  On August 2, 1999, Ritter filed a formal EEO

Complaint.[20]  In her EEO Complaint, Ritter alleged that Smith-Killings received favorable

treatment due to her race.  Ritter complained that Smith-Killings did not receive a Letter of

Concern for her refusal to sign the contract modification.  In addition, Ritter complained that

---

[16]  (*Id.* at ¶ 6).

[17]  Specifically, the Letter states, in relevant part,

This letter of concern is an informal action and will not be placed in your formal personnel records.  However, if the behaviors described above continue, it could result in formal action being taken.  As [Ritter's] supervisor, [Clark] was compelled to bring this to [Ritter's] attention in an effort to assist [her] in resolving [her] problems as they influence the workplace. [Ritter] [is] a valued employee and [Clark] [is] available to assist [her] within the scope of [her] supervision.

(*Id.* at ¶ 7).

[18]  (Def. Ex. 4).  Due to a request by the union, Wheeler destroyed the October 6, 1998 Letter of Counseling and Letter of Concern for Ritter.  (*Id.*).

[19]  (Def. Ex. 5).

[20]  (Def. Ex. 8).

Smith-Killings has received additional office equipment[21] and personnel than Ritter.[22]

Further, Ritter complained that she was forced to accept another employee into her team

when that employee did not want to work with her,[23] and that she has been forced to do the

work of another contract specialist in addition to her own work.[24]   The Department of

Defense Office of Complaint Investigations conducted an investigation and held a fact-

finding conference.[25]   On January 30, 2001,[26] the Army issued its final decision concluding

that Ritter failed to provide sufficient evidence that management's actions were based on

race.[27]

C.     *This Lawsuit*

On April 27, 2001, Ritter filed this action against Joseph W. Westphal, Acting

---

[21]   According to Ritter, Smith-Killings has a printer in her office and Ritter must use the printer that is shared by other contract specialists.  In addition, Smith-Killings received a new calculator before Ritter received one.

[22]   During the relevant time, Ritter had one employee on her team and Smith-Killings had two.

[23]   Ritter claims that Martha Dixon (hereinafter "Dixon") disliked her and did not want to work with her.  This incident occurred in 1995 or 1996.

[24]   Ritter contends that, prior to having Dixon assigned to her team, she had Lucias Tony (hereinafter "Tony"), an African-American contract specialist that received a lower-pay grade than Ritter, on her team.  Ritter complains that Wheeler told her to complete Tony's work if he could not do so.  Ritter asserts that this conduct occurred from 1991 or 1992 until Tony left in 1996 or 1997.

[25]   (Def. Exs, 1 & 11; Pl. Ex. 3).

[26]   On July 18, 2000, Ritter filed another informal EEO complaint alleging racial discrimination and retaliation.  (Def. Ex. 13).  On January 30, 2001, the Army dismissed Ritter's complaint for failure to cooperate because she did not respond to its request for further information.  (Def. Ex. 15).

[27]   (Pl. Ex. 2; Def. Ex. 12).

Secretary of the United States Department of the Army,[28] the Department of the Army, and the United States of America alleging claims of race discrimination and retaliation under Title VII.[29] (Doc. # 1, Compl.).  By the Complaint, Ritter alleges that she was subjected to disparate treatment in relation to the execution of a contract, that she has been required to accept persons with whom no one else would work on her work team, that she has been deprived of equipment provided to others and that she has been made to suffer in the "terms and conditions of her employment."  (*Id*. at ¶¶ 8-10).  Ritter also complains that, after reporting the discriminatory conduct, she was subjected to various acts of retaliation and reprisal which include the following: she was ostracized by her fellow workers, she was precluded from executing the requirements of her position which entails performing some supervisory acts when her immediate supervisor is absent, and she has not received awards and recognition as have others who have performed less efficiently.  Ritter seeks an award of back pay and front pay, compensatory damages, court costs, attorneys' fees, and declaratory and injunctive relief.  (*Id*.).

---

[28]   By operation of Federal Rule of Civil Procedure 25(d)(1), Dr. Francis J. Harvey (hereinafter "Harvey") was automatically substituted as the named defendant in this action inasmuch as, on November 19, 2004, Harvey was sworn in as the 19th Secretary of the United States Army.

[29]   Pursuant to 42 U.S.C. § 2000e-16(c), an aggrieved party under Title VII may sue the head of the department, agency, or unit.  The Eleventh Circuit Court of Appeals has explained that this provision means that, in a Title VII action, the proper defendant is the head of the agency in his official capacity.  *See Canino v. United States E.E.O.C.,* 707 F.2d 468, 472 (11th Cir. 1983).  Thus, in this case, the only proper defendant is Harvey, in his official capacity as the Secretary of the Army.  Accordingly, all claims asserted by Ritter against the Department of the Army and the United States are due to be DISMISSED.  Notwithstanding the dismissal of these defendants, the court will hereinafter refer to the only proper defendant, Harvey, as "the Army" throughout the remainder of the Opinion.

On July 9, 2001, the Army filed a motion for summary judgment.  Ritter filed her response to the motion on July 27, 2001 (Doc. # 13), and on August 27, 2001, the Army filed a reply (Doc. # 14).  The motion is thus ripe for this court's consideration.

## II.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 2000-4(f)(4). The parties do not contest personal jurisdiction, and the court finds adequate allegations in support of personal jurisdiction.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

A.      *Title VII Standards*

Title VII prohibits an employer from discriminating against its employees on the basis

of race. 42 U.S.C. § 2000e-2(a)(1).[30]  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established the allocation of the burden of production and an order for the presentation of proof in discrimination and retaliation cases. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a prima facie  case of unlawful race discrimination or retaliation by a preponderance of the evidence.  411 U.S. at 802.  A prima facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory [or retaliatory] criterion." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977).

A plaintiff may establish a Title VII claim by introducing, among other things, circumstantial evidence that creates an inference of discrimination. *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).  The Eleventh Circuit has explained that a plaintiff can establish a prima facie case based on disparate treatment by showing that "(1) [she] belongs to a racial minority; (2) [she] was subject[ed] to [an] adverse job action; (3) [her] employer treated similarly situated employees outside [her] classification more favorably; and (4) [she] was qualified to do the job." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of

---

[30] Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

discrimination."  *Holified v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citations omitted).

The Eleventh Circuit has established similarly broad standards for a prima facie case of retaliation.  An individual alleging retaliation under Title VII must establish her prima facie case by demonstrating "(1) that [she] engaged in statutorily protected activity; (2) that [she] suffered an adverse employment action; and (3) that there is some causal relation between the two events."  *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (citations omitted).  "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001) (citations omitted).  In order to show the two things are not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action.  *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression. . .").  "That requirement rests upon common sense.  A decision maker cannot have been motivated to retaliate by something unknown to him.  As with most facts, the defendant's awareness can be established by circumstantial evidence."  *Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

If the plaintiff establishes a prima facie case of racial discrimination or retaliation, the

burden then shifts to the employer to rebut the presumption by articulating legitimate, non-discriminatory or non-retaliatory reasons for its employment action. *Holifield*, 115 F.3d at 1564. "This intermediate burden is 'exceedingly light.'" *Id.* (citing *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994)). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *See McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253-255 (1981).

Once the employer satisfies this burden of production, "the presumption of discrimination [or retaliation] is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citations omitted). The establishment of a prima facie case does not in itself entitle a plaintiff to survive a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987); *Pace v. S. Ry. Sys.*, 701 F.3d 1383, 1389 (11th Cir. 1983). After an employer proffers non-discriminatory or non-retaliatory reasons for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered . . . reasons is pretextual." *Chapman*, 229 F.3d at 1037.

As previously mentioned, Ritter alleges claims of race discrimination and retaliation

against the Army.[31]  The court will address these claims in turn.[32]

B.    *Race Discrimination*

    1.    *Letter of Concern*

Ritter complains that she was subjected to race discrimination when she received the

Letter of Concern for her refusal to sign the contract modification and Smith-Killings, who

---

[31]    Because Ritter relies upon circumstantial evidence, rather than direct or statistical evidence, her discrimination claims are properly analyzed using the burden shifting paradigm developed in *McDonnell Douglas* and its progeny.  *See, e.g., McDonnell Douglas v. Green,* 411 U.S. 792 (1973).  Further, although Ritter is Caucasian, her discrimination claims must be analyzed by this court as any other racial discrimination claims.  *See Sasser v. State of Ala. Dept. of Corrections*, 2005 WL 1383178, * 5 (M.D. Ala. June 9, 2005) (Fuller, C.J.) (noting that racial discrimination claims against Whites is just as repugnant to constitutionally protected values of equality as racial discrimination claims against Blacks and thus are due to be treated as discrimination claims).

[32]    At the outset, the court notes that Ritter generally argues that she was subjected to an abusive or hostile work environment.  It is apparent that Ritter makes this argument as an alternative to addressing the requisite of an adverse employment act.  Needless to say, the court is quite befuddled by this argument.  Nevertheless, the court notes that Ritter raises this new hostile work environment claim in her response to the motion for summary judgment.  The liberal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure do not afford Ritter with an opportunity to raise this new claim at this stage of the case.  *Cooley v. Great S. Wood Preserving,* 2005 WL 1163608, *2 (11th Cir. May 18, 2005) ("This [liberal pleading] standard, however, does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.") (citation omitted).  "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."  *Id*. at *3.  Accordingly, Ritter's hostile work environment claim is due to be dismissed on this basis.

    Alternatively, the court finds that the evidence before it does not establish a racially hostile work environment.  Ritter has not produced evidence that Wheeler's treatment of her was motivated by race, nor has she shown that the questioned conduct was severe enough to affect a term, condition, or privilege of employment.  While Ritter may believe that Wheeler treated her unfairly, Title VII does not create a "general civility code for the American workplace."  *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998).  *See Cooley,* 2005 WL at *4 (noting that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment,' and these standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'") (citation omitted).  Consequently, the court concludes that Ritter's claims pertaining to hostile work environment are without merit.

also refused to sign the contract modification, did not receive such a Letter.  For purposes of this motion, the court is satisfied that Ritter has arguably established a prima facie case of discrimination with respect to her receipt of the Letter of Concern.  The evidence before the court establishes that Ritter is a member of a group protected by Title VII; she was subjected to an adverse job action when she received the Letter of Concern for her refusal to sign the contract modification; her employer treated similarly situated employees outside her classification more favorably by not giving Smith-Killings a Letter of Concern for her refusal to sign the contract modification; and Ritter was qualified to do her job.

The court is also satisfied that the Army has offered a legitimate, non-discriminatory reason for the challenged decision.  According to Clark and Wheeler,  Ritter received the Letter of Concern because of her argumentative nature and dilatory tactics which impaired her ability to carry out all of her duties in the manner expected by management.   Clark contends that, although Smith-Killings refused to sign the contract modification, she did so without argument.  Moreover, the contract modification was assigned to Ritter, not Smith-Killings to complete.  Hence, the Army maintains that Ritter's argumentative attitude in completing her tasks was the reason for its issuance of the Letter of Concern.  This reason is clearly a legitimate, non-discriminatory business decision. *See Garcia-Cabrera v. Cohen* 81 F. Supp. 2d 1272, 1280 -1281 (M.D. Ala. 2000) (Albritton, J.) ("It is beyond question that an inability to get along with co-workers and demonstrated caustic or rude behavior is a legitimate, non-discriminatory reason for an employment decision.").

Consequently, the heart of the dispute is whether there is sufficient evidence that the

proffered reason is a pretext for discrimination.  Ritter may establish pretext by undermining the credibility of the Army's proffered explanation.  *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998).  Instead of relying on conclusory allegations of discrimination, Ritter must adduce evidence demonstrating "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence."  *Id.*

Ritter contends that the legitimate non-discriminatory reason for the Letter of Concern is a pretext for race discrimination.[33]  In support of this contention, Ritter argues that "[a]t no time during the course of [her] employment with the agency has any memorandum been generated describing any specific act of insubordination contemporaneous with any event." (Pl. Resp. Mot. Summ. J., p. 17).  This argument questions the veracity of the Army's reason for the Letter of Concern.  Notwithstanding, Ritter has not come forward with any evidence which questions the veracity of this reason or reveals any discriminatory animus on the part

---

[33]  It is obvious that Ritter believes that it was unfair for her to receive the Letter of Concern for her refusal to sign the contract modification when Smith-Killings also refused to do so but did not receive a Letter of Concern.  However, the "fairness" of such a decision is not an issue to be decided by this court.  Rather, the issue is whether the decision constituted illegal discrimination on the basis of Ritter's race.  Indeed, federal courts "are not in the business of adjudging whether employment decisions are prudent or fair.  Instead [the] sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision."  *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999), *cert. denied,* 529 U.S. 1109 (2000). *Accord, Rojas v. Fla.,* 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining that in analyzing discrimination claims, federal courts must be careful not to let plaintiffs "simply litigate whether they are, in fact, good employees" and must focus on whether the proffered reason for employment decision at issue was an honest one, rather than whether it was a correct one).

of the Army. *See Chapman*, *supra*. ("[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered . . . reasons is pretextual.").  Instead, Ritter has merely presented unsubstantiated assertions which, alone, are not enough to withstand a motion for summary judgment. *See Celotex*, 477 U.S. at 322.  Furthermore, even if it were it conceded that Ritter was not insubordinate, argumentative or dilatory in her work performance, the relevant inquiry is whether the Army *believed* that she was when it issued her the Letter of Concern. *See  Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory....") (emphasis in original).  The evidence before the court indicates that the Army had a good-faith basis for believing that Ritter had engaged in the improper conduct at issue.  Hence, Ritter has failed to create a triable issue of fact as to the Army's asserted reason for its issuance of the Letter of Concern. Summary judgment in favor of the Army is thus due to be granted on this claim.

2.  *Assignment of Team Members*

In her Complaint, Ritter also alleges that she was subjected to race discrimination when she was required to accept persons on her work team with whom no one else would work.  The Army contends that this claim is time barred because Ritter did not consult an EEO counselor within 45 days of the alleged discriminatory event.  Ritter has apparently abandoned this claim as she failed to address it in her response to the motion for summary

17

judgment and failed to present any evidence on this claim. *See Walton ex rel. R.W. v. Montgomery County Bd. of Educ.,* 2005 WL 1217256, *4 (M.D. Ala. May 20, 2005) (Albritton, J.) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995)). "[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp.,* 43 F.3d at 599. Accordingly, as Ritter does not rely upon this claim in summary judgment, it is deemed abandoned. The Army is thus entitled to summary judgment on this claim.

      3.    *Provision of Work Equipment*

Further, Ritter complains that she was subjected to race discrimination by being deprived of work equipment which was provided to others. Specifically, Ritter complains that Smith-Killings received a calculator before she did and that Smith-Killings has a printer located in her office while Ritter does not and is thus forced to share one with other employees. Assuming for the purposes of this motion, that this provision of work equipment constitutes an adverse employment act, the court finds that the Army is entitled to summary judgment on this claim.

The Army has presented a legitimate, non-discriminatory reason for its provision of work equipment. According to Wheeler, when an employee is assigned to a position, he or she is typically placed in the office of the person they replaced and they inherit the work equipment that is located in that office. Smith-Killings maintains that, when she moved into her office as a Contracting Officer, she inherited the equipment– including the printer– that

had been used by her predecessor.  Furthermore, Clark contends that, upon receiving Ritter's request for a new calculator and personal printer, she requested that the systems administrator provide those items to Ritter.  Ritter received her calculator, but had not yet received the printer because the systems administrator asserted that there were no printers available.

With the Army articulating a non-discriminatory reason for its decision, the burden shifts back to Ritter to demonstrate that this stated reason was a pretext for racial discrimination.  Likewise, on this claim, Ritter has not come forward with any evidence that questions the veracity of the Army's reason or reveals any discriminatory animus on the part of the Army.[34]  *See Holifield,* 115 F.3d at 1565.  As a result of this failure to create a triable issue of fact as to the Army's asserted reason, summary judgment in favor of the Army is due to be granted on this claim.

C.   *Retaliation*

In her Complaint, Ritter contends that she was subjected to retaliation after she reported the alleged discriminatory conduct.  Specifically, Ritter complains that, after filing her October 14, 1998 informal EEO Complaint, she was ostracized by her fellow workers, precluded from executing the requirements of her position which entails performing some supervisory acts when her immediate supervisor is absent, and has not received awards and

---

[34]  For instance, Ritter has presented no evidence that– despite the systems administrator's statement to the contrary– printers were available but one was not provided to Ritter because of her race.  Otherwise stated, there is no evidence which establishes that the assignment of equipment within the office was done with a discriminatory motive.  Conversely, the evidence indicates that when a request for work equipment was made to management, the request was fulfilled as soon as financially possible.

recognition as have others who have performed less efficiently.

As the Army properly argues, Ritter fails to set forth when these instances allegedly occurred.  In her affidavit, Ritter generally contends that these incidents occurred after she filed her EEO complaint.  (Pl. Ex. 1, Pl. Aff., ¶¶ 27-33).  Having failed to provide the court with the specific dates or time period for these actions, Ritter makes it virtually impossible for the court to determine whether these actions are time-barred or proximately related to the filing of her EEO Complaint.[35]  Nonetheless, assuming that these claims were timely filed and Ritter has properly exhausted her administrative remedies, the court finds that these claims are due to be dismissed.

The evidence before the court establishes that Ritter cannot establish a prima facie case of retaliation because the alleged retaliatory acts do not rise to the level of judicially recognized adverse employment actions.[36]  Two types of actions are recognized as adverse employment actions for Title VII retaliation purposes: (1) ultimate employment decisions; and (2) non-ultimate employment decisions that otherwise " 'meet some threshold level of substantiality.' "  *Stavropoulos v. Firestone,* 361 F.3d 610, 616-17 (11th Cir. 2004) (quoting *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1118 (11th Cir. 2001)).  "Ultimate

---

[35] The court notes that this deficiency also precludes a determination that these alleged acts were causally related to her EEO Complaint.

[36] It is undisputed that Ritter engaged in protected activity and that the Army was aware of that activity.  Without doubt, protected expression includes filing complaints with the EEOC or through an employer's internal grievance procedure.  *Berman v. Orkin Exterminating Co.,* 160 F.3d 697, 702 (11th Cir. 1998) (filing EEOC complaint is protected conduct); *Rollins v. Fla. Dep't of Law Enforcement,* 868 F.2d 397, 400 (11th Cir. 1989) (internal complaints of discrimination are statutorily protected conduct).

employment decisions include decisions such as termination, failure to hire, or demotion." *Id.* at 617 (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)). Ritter was not fired, demoted, or denied a position. Neither did she suffer a reduction in pay, position, or benefits. In order to make out her prima facie case of retaliation, Ritter must be able to show that the Army took some other action meeting a threshold level of substantiality.[37]

Whether an employee has suffered an adverse employment action is normally considered on a case-by-case basis. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).[38] The Eleventh Circuit has emphasized that for an employment action to be adverse it "must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Davis*, 245 F.3d at 1239. While proof of direct economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id*. Thus, to prove an adverse employment action "an employee must show a *serious and material* change in terms, conditions, or privileges of employment." *Id*. (emphasis in original). In determining whether a "serious and material" change in the terms, conditions, or privileges of employment has

---

[37] "This limitation is consistent with the basic principle that Title VII is . . . neither a general civility code nor a statute making actionable for the 'ordinary tribulations of the workplace.'" *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001); *see also Wu v. Thomas*, 996 F.2d 271, 273-274 (11th Cir. 1993) (noting that an adverse employment action does not result from every unkind act, even those without economic consequences).

[38] The court notes that determining whether an employment action is adverse for purposes of Title VII is a matter of federal, not state, law. *Hinson*, 231 F.3d at 829.

been established, *Davis* instructs the court to disregard the plaintiff's subjective view of the significance and adversity of the employer's action: "[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstance." *Id*. (citation omitted).

It is undisputed that Ritter views the alleged retaliatory actions to be materially adverse. Thus, the central inquiry before this court is whether a reasonable person in the circumstance would view the alleged actions as materially adverse. *Davis, supra*. The court finds that this inquiry is answered in the negative.

In the instant case, Ritter claims that she was ostracized by her fellow workers, precluded from executing the requirements of her position which entails performing some supervisory acts when her immediate supervisor was absent, and did not receive any awards or any other recognition as have others who have performed less efficiently. This court is convinced that no reasonable person could view these actions, whether individually or collectively, as having a "serious and material change in the terms, conditions, or privileges" of Ritter's employment. *See Davis*, 245 F.3d at 1239. Beyond question, ostracism by Ritter's fellow co-workers– without evidence that such acts were done at the direction of or condoned by management– does not constitute "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis, supra*.[39] Moreover, Ritter's claims that she

_____

[39] The Eleventh Circuit has yet to address the precise issue of when an employer may be held liable, if at all, for a Title VII retaliation claim premised on co-worker harassment or ostracism. However, the court finds that the position taken by the Tenth Circuit is instructive. In *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264 (10th Cir. 1998), the court held that "co-worker hostility or retaliatory harassment, *if sufficiently severe,* may constitute 'adverse employment action'

was precluded from executing the requirements of her position which entails performing some supervisory acts when her immediate supervisor is absent, and has not received performance awards and recognition as have others who have performed less efficiently are vague and generalized. She only presents these conclusory allegations in her affidavit and fails to present any evidence which supports or even narrows these claims. As such, the court simply cannot conclude that these nebulous and conclusory allegations suffice to constitute adverse employment actions as there is no evidence that they constitute "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis, supra*.[40] Accordingly, because Ritter has failed to demonstrate that she has suffered any employment action by the Army that seriously or materially affected the terms or conditions of her employment, these alleged acts fall short of constituting adverse employment action.

Consequently, because adverse employment action is an indispensable element of a

---

for purposes of a retaliation claim." (emphasis added). Yet, in determining the circumstances under which such hostility can be attributed to the employer, the court noted that liability under Title VII should not be imposed unless the employer's "supervisory or management-level personnel orchestrated, condoned, or encouraged the co-workers' actions." *Id.* at 1265. *See Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1039 (7th Cir. 1998) ("[A]n adverse employment action might occur when an employer orders its employees to shun the plaintiff, provided that this activity causes material harm to the plaintiff."). Because Ritter has not demonstrated that any of the Army's supervisory or management-level personnel "orchestrated, condoned, or encouraged" the behavior which forms the basis of her retaliation claim, she cannot establish that she suffered an adverse employment action. Simply stated, the alleged ostracism by Ritter's co-workers does not amount to an 'adverse employment action' for Title VII purposes because it does not, under the totality of the circumstances, meet a threshold level of substantiality. *See Stavropoulos,* 361 F.3d at 616-17.

[40] Otherwise stated, because Ritter has failed to present any evidence which indicates that she was denied a performance award or her ability to perform her job was impaired by her supervisor's absence, there is no triable issue of fact as to whether the alleged acts constitute adverse employment actions.

retaliation case, Ritter's failure to present sufficient evidence for a reasonable jury to find that this element was met is fatal to her case. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) ("Although a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is appropriate if [she] fails to satisfy any one of the elements of a prima facie case.") (citations omitted). Accordingly, finding no material issues of fact or law in existence, summary judgment on Ritter's retaliation claims are warranted.

## V. CONCLUSION[41]

For the reasons stated above, it is hereby ORDERED that the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 8) is GRANTED.

It is further ORDERED that the pretrial conference set for August 9, 2005 is CANCELED.

It is further ORDERED that all pending motions are DENIED as moot.

The Clerk of the Court is hereby DIRECTED to remove the above-styled case from the September 12, 2005 trial docket.

A separate final judgment will be entered in accordance with this Memorandum

---

[41] The court notes that the Complaint alleges that jurisdiction is based on Title VII, 42 U.S.C. § 1981 (hereinafter "Section 1981"), and 42 U.S.C. § 1983 (hereinafter "Section 1983"). (Compl., ¶ 2). To the extent that Ritter alleges race discrimination claims under Sections 1981 and 1983, the court finds that these claims are due to be dismissed. As the elements of these causes of action are the same as a cause of action under Title VII– when Sections 1983 and 1981 are employed as remedies for the same conduct remedied by Title VII, *see generally Sasser, supra*– the court finds that Ritter's Sections 1983 and 1981 claims fail for the same reasons her Title VII claims fail.

Opinion and Order.

      DONE this 3rd day of August, 2005.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

25